Paul H. HUBBARD, Receiver in Bankruptcy for Jack Riley, d/b/a Webb's City Drug, Petitioner,

v.

Jeffrey L. LAGOW, Assignee of Temple National Bank, Respondent.

No. 12588.

Court of Civil Appeals of Texas, Austin.

Jan. 3, 1979.

Rehearing Denied Jan. 24, 1979.

**164**

Paul H. Hubbard, Sue Stepp, Naman, Howell, Smith, Lee & Muldrow, Waco, for appellant.

James L. Carroll, Gerald M. Brown, Carroll, Carroll & Brown, Temple, for appellee.

O'QUINN, Justice.

In an earlier phase of this appeal this Court held that Paul H. Hubbard, receiver in bankruptcy for Jack Riley, doing business as Webb's City Drug, did not have standing to appeal by writ of error from default judgment against Riley. (559 S.W.2d 133) The Supreme Court disagreed and remanded the cause to this Court for consideration of the appeal on its merits. (567 S.W.2d 489)

The Temple National Bank brought this suit in April of 1976 on a promissory note in the principal amount of $22,750.96 against Riley, doing business as Webb's City Drug, alleging its security interests in all of Riley's inventory, accounts receivable, business equipment, and fixtures. The bank also sought to restrain Riley from disposing of, wasting or removing any of the secured assets. The bank thereafter assigned all its rights in the note, security agreements, and financing statements previously executed by Riley, as well as its pending cause of action, to Jeffrey L. Lagow, respondent in this appeal.

Riley meanwhile had been served with process, together with copy of the trial court's restraining order and notice of hearing to show cause why temporary injunction should not issue. After Riley failed to answer or make other appearance, the trial court entered default judgment against Riley late in May of 1976, and ordered all security interests held by Lagow foreclosed and that the secured goods and chattels be delivered to Lagow.

Thereafter Riley filed his petition in bankruptcy, and upon application of Southwestern Drug Corporation, apparently an unsecured creditor, the bankruptcy court appointed Hubbard receiver for the assets of the debtor. Shortly prior to expiration of six months after entry of the judgment in the state court, Hubbard filed application for writ of error seeking revision of the judgment.

Hubbard brings five points of error under which the main contentions are (1) that it was error to enter a delivery order because an order of sale was the proper action under the pleadings and (2) that the judgment for foreclosure is void absent a judicial sale.

Hubbard alleged in his petition for writ of error that "divers and manifold errors have intervened and occurred as is manifest in said record and in the proceedings," and that he "desires to remove such judgment for revision and correction to the Court of Civil Appeals . . ."

The trial court's judgment found the note sued upon secured by security agreements giving a secured interest in merchandise inventories and proceeds from the business, its existing and future accounts, as well as all business equipment and fixtures, and ordered the security interest foreclosed and that "such good[s] and chattel[s] be delivered to" Lagow, assignee of the Temple National Bank, original owner of the note and security contract. The court awarded judgment for the principal sum of the note, attorney's fees as specified in the note, and for interest accrued to the time of judgment as provided in the note.

In addition, the judgment provided that the total sum of $27,758.07 would "bear interest . . . until paid *less any funds received by Plaintiff [Lagow] from the sale of the above good[s] and chattel[s] delivered to Plaintiff under foreclosure of Plaintiff's lien* set forth . . . above and that a money judgment exist for any difference." (Emphasis added)

The security agreements pleaded by plaintiff bank below provided (1) that the "[b]ank may, in its discretion, before or after default: . . . require debtor to give possession or control of the collateral to bank; . . . take any action debtor is required to take or otherwise necessary to obtain, preserve, and enforce this security interest . . ." and (2) that "[w]hen an event of default occurs, the entire obligation becomes immediately due and payable at bank's option without notice to debtor, and bank may proceed to enforce payment of same and exercise any and all of the rights and remedies available to a secured party *under the Uniform Commercial Code as well as all other rights and remedies.*" (Emphasis added)

The trial court's judgment conclusively established the default of Riley as debtor to the bank. Although at common law the secured party could be required to make an "election of remedies" upon default, the remedial provisions available under the Texas Business and Commerce Code are much broader that under pre-Code law. 51 Tex.Jur.2d, Part 2, *Secured Transactions,* sec. 284 (1970).

Specifically, the Code provides, in pertinent part, that the secured party ". . . may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure . . *The rights and remedies referred to in this section are cumulative.*" (Emphasis added) Tex.Bus. & Comm.Code, sec. 9.501(a) (Supp. 1978).

■ The Code provision for cumulative remedies constitutes a substantial change from pre-Code law, and since the remedies are cumulative, the secured party is not required to make an election, but may take any permitted action or combination of actions. 51 Tex.Jur.2d, Part 2, *Secured Transactions,* secs. 288 & 284 (1970).

One legal writer states the change in this language: "It would seem that the purpose of the Code is quite clear, namely, to abolish the doctrine of election of remedies when a security interest is enforced. The secured party is entitled to only one satisfaction,

but he may seek it in a number of ways, even though they may presently be considered inconsistent." Loiseaux: *Default Proceedings Under the Texas Uniform Commercial Code,* 44 Texas L.Rev. 702, 711 (1966).

Although the Code permits foreclosure by any available judicial procedure and most pre-Code foreclosure law still applies, the Code has abandoned the "election of remedies" doctrine which existed under pre-Code law. 51 Tex.Jur.2d, Part 2, *Secured Transactions,* sec. 296 (1970). The broader choices of remedies, however, will not allow the secured party to harass the debtor. White & Summers: *Uniform Commercial Code,* p. 965 (1972).

■ The trial court sought to award the secured party direct possession of the property securing the debt. Under the Code, upon default, unless otherwise agreed, the secured party has the right to take possession of the collateral, and in taking possession the secured party may proceed without judicial process, if this may be accomplished without causing a breach of the peace, or the secured party may proceed by action. Section 9.503 of the Code (Supp.1978). If the secured party anticipates difficulty, or a breach of the peace, the party may obtain judicial process to aid in effecting possession. Spivack: *Secured Transactions,* p. 134 (1963). The record in this appeal shows that the secured party obtained orders restraining Riley from moving or disposing of the property.

A recognized legal writer has explained rights of the secured party in this statement:

"If the debtor offers resistance, the secured party will avoid trouble by invoking judicial aid and having the possession made by an officer of the court. Local procedure will dictate the form of the proceeding: replevin or claim and delivery or a full-dress foreclosure suit. Repossession under legal process seems to look forward to a judicial sale, *although there is no reason why this must be so.* Under section 9–503 or any other security

statute which gives the secured party a right to repossession and to have process if he cannot retake the property peacefully, he would seem to be *entitled to a court order directing the sheriff to seize the collateral and deliver it to the secured party.*" (Emphasis added) Gilmore: *Security Interests in Personal Property,* vol. 2, p. 1213 (1965).

■ The Code permits the secured party, after default by the debtor, to sell, lease or otherwise dispose of any or all of the property constituting collateral. Section 9.504(a) Code (Supp.1978). The Code clearly recognizes two basic types of sales which may be made after default. The first is the judicial sale, which is not subject to the Code but is conducted under other rules of law. The other is nonjudicial sale by the secured party which is conducted under the rules of the Code. Sections 9.501(a) & 9.504(c) (Supp.1978); 51 Tex.Jur.2d, Part 2, *Secured Transactions,* sec. 305 (1970). The nonjudicial sale is freely permitted and may be either public or private, the choice of remedies resting in the secured party. 51 Tex.Jur.2d, Part 2, *Secured Transactions,* secs. 315 & 305 (1970).

The effect of any disposition by the secured party is made clear by the Code:

"When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. *The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this subchapter or of any judicial proceedings* (1) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or (2) in any other case, if the purchaser acts in good faith." (Emphasis added) Sec. 9.504(d) of the Code (Supp.1978).

The secured party is required to give "reasonable notification" of the time after which any private sale or other intended disposition is to be made of the collateral. Sec. 9.504 of the Code (Supp.1978). The Comments on Section 9.504 point out that except for the requirement of notification there is no statutory period during which the collateral must be held before disposition. See Comment 5, Sec. 9.504 of the Code (1968). Reasonable notification is not defined, but the Comment observes that ". . . at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire." It is obvious from the judgment that the trial court anticipated that Lagow, having possession, would proceed with sale.

■ The principal complaint by petitioner is that although plaintiff below in its pleadings sought foreclosure of its security interests "together with an appropriate order of sale," and prayed expressly for such relief, the trial court, in granting motion for default judgment, ordered "all security interest . . . be foreclosed and that such good[s] and chattel[s] be delivered to Plaintiff . . ." We are constrained to agree that the judgment of the trial court does not conform to the pleadings.

■ Rule 301, Texas Rules of Civil Procedure, in its opening clause provides, "The judgment of the court shall conform to the pleadings . . ." *Socony-Vacuum Oil Co. v. Aderhold,* 150 Tex. 292, 240 S.W.2d 751, 756 (1951). Generally, the trial court may not grant relief not supported in the pleadings, and a judgment not supported by the pleadings is not warranted. *Carreon v. Texas State Department of Welfare,* 537 S.W.2d 345, 347 (Tex.Civ.App. San Antonio 1976, no writ). In two instances it has been held that the trial court's jurisdiction to render judgment is invoked by pleadings, and that part of a judgment the pleadings do not support is void. *Ex parte Fleming,* 532 S.W.2d 122 (Tex.Civ.App. Dallas 1975, no writ); *Douthit v. Anderson,* 521 S.W.2d 127, 129 (Tex.Civ.App. Dallas 1975, no writ).

Because the judgment in the respects described does not conform to the pleadings, we will reverse the judgment and remand the cause to the trial court for amendment and modification of its judgment.

The record does not disclose whether Lagow took possession of the property upon which the lien was foreclosed and proceeded to conduct the sale which the judgment obviously anticipated. The respondent *dehors* the record, however, represents that a sale was conducted, after notice to Riley and other interested parties, and that the property sold for a sum more than $3,700 in excess of the judgment.

The trial court may find it expedient to determine as a matter of fact whether the sale occurred and whether "reasonable notification" of the time of the proposed sale or other disposition was given interested parties under authority of section 9.504 of the Code. The trial court may also desire to determine whether under the facts and circumstances of the sale, if a sale occurred, title passed to the purchaser who took free of Riley's rights in the property under section 9.504(d) of the Code. Finally, determination may be appropriate to ascertain whether the controversy has become moot. *Polk v. Davidson*, 145 Tex. 200, 196 S.W.2d 632 (1946); *City of West University Place v. Martin*, 132 Tex. 354, 123 S.W.2d 638 (1939).

The judgment of the trial court is reversed, and the cause is remanded with instructions to modify the judgment to conform to the pleadings, and for such other proceedings as may be deemed appropriate.

Reversed and Remanded with Instructions.