In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00224-CR

                                                ______________________________

 

 

                                         TAVARES
SPIKES, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 188th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 37,940-A

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

Having before us only the sketchy facts set
out in a police officer’s offense report, we learn that Tavares Spikes was
stopped in Gregg County for a traffic violation, that, sometime later, a drug
dog alerted on the vehicle and that the officer searched the vehicle and found
illegal drugs.  Spikes later pled guilty
to possession of a controlled substance with intent to deliver.  The trial court sentenced Spikes to forty
years’ imprisonment.

On appeal, Spikes argues that he received
ineffective assistance of counsel because his trial counsel failed to file a
motion to suppress the evidence found during the traffic stop. 

We affirm the trial court’s judgment
because, in the very limited record before us, there is insufficient evidence
to demonstrate that the trial counsel was ineffective for failing to file a
motion to suppress.

            While
observing traffic on Interstate 20 in Gregg County, Texas, Sergeant Bruce Dalme
saw Spikes’ vehicle traveling in the left lane. 
After pursuing and initially being unable to locate the vehicle, Dalme
saw and stopped Spikes’ vehicle for traveling “in the right lane following a
truck tractor semi-trailer at an unsafe following distance.”  Dalme described questioning Spikes about his
travel plans, destination, and travel behavior, and Dalme described Spikes as
nervous.  Spikes became increasingly
nervous every time Dalme mentioned “the possibility of drugs being in the
vehicle.”  During conversation with the
officer, Spikes exhibited dry mouth, hurried and shaky speech, lack of eye
contact, and appeared to have to think about simple questions.  When asked for permission to search the
vehicle, Spikes denied consent.  Dalme
detained Spikes for about twenty-three minutes until a drug dog arrived.  The drug dog indicated a positive alert; the
officer searched the vehicle and discovered marihuana in the passenger area and
a white powdery substance that he recognized to be consistent with cocaine in
the trunk.  These were the basic facts
set out in the offense report.  Because
of Spikes’ guilty plea, there was no testimony from Dalme to establish what
else he knew during, or what other circumstances surrounded, his stop and
search of Spikes’ vehicle.

            Ineffective
assistance of counsel claims are evaluated under a two-part test formulated by
the United States Supreme Court, requiring a showing of both deficient
performance and prejudice.  Strickland v. Washington, 466 U.S. 668,
689 (1984); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999); Fox
v. State, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, no pet.).  First, Spikes must show that his counsel’s
representation fell below an objective standard of reasonableness.  Fox,
175 S.W.3d at 485 (citing Tong v. State,
25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). 
A Strickland claim must be “firmly
founded in the record,” and “the record must affirmatively demonstrate” the
meritorious nature of the claim.  Goodspeed v. State, 187 S.W.3d 390, 392
(Tex. Crim. App. 2005); Thompson, 9
S.W.3d at 813.  The second Strickland prong requires a showing that
the deficient performance prejudiced the defense to the degree that there is a
reasonable probability that, but for the attorney’s deficiency, the result of
the trial would have been different.  Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712.  Failure to satisfy either prong of the Strickland test is fatal.  Ex parte
Martinez, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

            Trial
counsel’s conduct is reviewed with great deference, without the distorting
effects of hindsight.  Thompson, 9 S.W.3d at 813.  We indulge a strong presumption that counsel’s
conduct falls within the wide range of reasonable, professional assistance, and
motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994).  The
defendant must rebut the presumption that the challenged conduct can be
considered sound strategy.  Id.

            Here, Spikes
argues that his trial counsel was ineffective because he failed to file a
motion to suppress the evidence found during the traffic stop.  One problem with Spikes’ claim is that
nothing in the record explains why trial counsel declined to file a motion to
suppress.  The Texas Court of Criminal
Appeals has said that “trial counsel should ordinarily be afforded an
opportunity to explain his actions” before a court finds that he or she
rendered ineffective assistance.  See Goodspeed, 187 S.W.3d at 392 n.14 (quoting Rylander v. State, 101 S.W.3d 107, 111
(Tex. Crim. App. 2003)); Fox, 175
S.W.3d at 485.  

            Where an
appellate record is silent as to why trial counsel failed to take certain
actions, the appellant has failed to rebut the presumption that trial counsel’s
decision was in some way—be it conceivable or not—reasonable.[1]  See Mata v. State, 226 S.W.3d 425, 431
(Tex. Crim. App. 2007); see also Thompson,
9 S.W.3d at 814 (if record is silent as to attorney’s particular course of
action, defendant did not rebut presumption). 
The ineffectiveness of counsel must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.  See Smith v. State, 51 S.W.3d 806, 813
(Tex. App.—Texarkana 2001, no pet.).  

            Here, there
is no record at any level to indicate why counsel declined to file a motion to
suppress.  In the absence of such a
record, and in the lack of anything that would indicate such completely
ineffective assistance as could be shown without such a record, we overrule the
point of error and affirm the trial court’s judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          July
9, 2010

Date Decided:             July
14, 2010

 

Do Not Publish











[1]Under
normal circumstances, the record on direct appeal will not be sufficient to
show that counsel’s representation was so deficient and so lacking in tactical
or strategic decision-making as to overcome the presumption that counsel’s
conduct was reasonable and professional. 
Mallett v. State,
65 S.W.3d 59, 69 (Tex. Crim. App. 2001); Fuller
v. State, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.).  In addressing this reality, the Texas Court of
Criminal Appeals has explained that appellate courts can rarely decide the
issue of ineffective assistance of counsel because the record almost never
speaks to the strategic reasons that trial counsel may have considered.  The proper procedure for raising this claim
is therefore almost always habeas corpus. 
Freeman v. State,
125 S.W.3d 505, 506 (Tex. Crim. App. 2003); Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim.
App. 2003).








y argues that he perfected a judgment lien on the collateral.  The trial court concluded that the U.C.C. did
not apply to the private sale of the bulldozer or to the retention of the track
hoe.  We review de novo a trial court’s
conclusions of law.  BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 

            A
judgment lien, though, is not created until a levy of execution occurs.  See
Tex. Employers’ Ins. Ass’n v. Engelke,
790 S.W.2d 93, 95 (Tex. App.––Houston [1st Dist.] 1990, orig. proceeding [leave
denied]); Herndon v. Cocke, 138
S.W.2d 298, 300 (Tex. Civ. App.—El Paso 1940, no writ).  The First District Court of Appeals has
explained:

A valid levy of an execution creates a lien on the
debtor’s property in favor of the judgment creditor, which in the case of
personal property is prima facie evidence of satisfaction of the
execution.  This lien is effective from
the time of the levy and continues in effect until it is lost or abandoned, or
in some way ceases to have vitality and effect. 

 

Tex. Employers’ Ins. Ass’n, 790 S.W.2d at 95 (citations omitted).  Because the writ of execution was never
delivered to an authorized officer, no valid levy of execution occurred.  The property was never seized by an officer
authorized to execute the writ.  Thus, no
judgment lien attached.  Because
Gillespie failed to strictly comply with the terms of the judgment and no levy
of execution occurred, the Abstracted Judgment did not authorize Gillespie’s
sale of the bulldozer and retention of the track hoe.  

III.       The Abstracted Judgment
Was Not Modified by Agreement

            Gillespie
argues that we should affirm the trial court because there is sufficient
evidence to support a conclusion that Williams agreed to the private sale.[8]  While Gillespie did not clearly explain how
such an agreement would affect the law governing this case, we have interpreted
his argument to be that the parties agreed to modify the terms of the judgment
to permit a private sale.

            We
first note that the issue of whether Williams agreed to the private sale was
disputed at trial.  Gillespie testified,
“Mr. Williams and I agreed that it would be cheaper and better if I took the
equipment and did my best to sell it and give him credit on the judgment.”  Gillespie later explained,

We both agreed. 
We talked about it twice at two different meetings.  And, we both agreed that I would pick it up,
and take it and put it up for sale and try to get the highest dollar I could
for it.  And, he didn’t have any problems
with it.  He agreed it to [sic].  We discussed it.  I don’t remember the exact words that were
used, but it was an agreement between us to do that.

  

Williams testified that Gillespie
promised to release the debt in exchange for the return of the bulldozer and
track hoe.  Williams also denied ever
discussing with Gillespie whether the bulldozer and track hoe would be sold at
a private sale with Gillespie.[9]  

            The trial court,
however, did not make any finding of fact concerning whether the parties, by
agreement, elected to enforce the original judgment through a private sale
instead of the public sale ordered in the judgment.  Williams requested and obtained findings of
fact and the entirety of the response to that request follows:

1.         The
Default Judgment in this case is valid.

2.         Section 9.504 of the UCC/BCC is not applicable to this case
because the judgment had already occurred.

3.         The three pieces of land are subject to foreclosure because
they are not homestead and they are not encumbered by liens.

4.         Notice of the sale, although verbal, was reasonable.

5.         The collateral, the D-4 and Trackhoe, were disposed of in a
commercially reasonable manner.

 

When findings of fact have been
made, the judgment may not be supported by an implied finding on any ground of
recovery, or defense, of which no element has been included in the court’s
findings.  Tex. R. Civ. P. 299; Leonard
v. Eskew, 731 S.W.2d 124, 132–33 (Tex. App.—Austin 1987, writ ref’d n.r.e.);
Uhlhorn v. Reid, 398 S.W.2d 169, 176
(Tex. Civ. App.—San Antonio 1965, writ ref’d n.r.e.).  When findings of fact are obtained, they
define and limit the issues upon which this Court can affirm.  We cannot affirm the trial court’s judgment
based on a theory on which the trial court failed to make any of the necessary
factual findings.  

            Irrespective
of whether there was an oral agreement between the parties, we are not
persuaded that the oral agreement at issue here can modify the terms of the Abstracted
Judgment.  An out-of-court oral agreement
qualifies neither as a written settlement agreement nor as a Rule 11
agreement.  See Tex. Civ. Prac. &
Rem. Code Ann. § 154.071 (Vernon 2011); Tex. R. Civ. P. 11; see
also Knapp Med. Ctr. v. De La Garza, 238 S.W.3d 767, 768 (Tex. 2007) (oral
settlement agreement not enforceable unless made in court and entered of
record).  Gillespie has not provided this
Court with any authority that the terms of a judgment can be modified by an oral
agreement of the parties made out of court. 


IV.       The
Trial Court Erred in Concluding the U.C.C. Did Not Apply

            Williams contends that the trial
court erred in concluding the U.C.C. did not apply to the private sale of the
bulldozer and track hoe.  Because the
bulldozer and track hoe were not sold pursuant to the terms of the judgment,
Williams argues the U.C.C. must apply. 
We agree.

            Texas
recognizes only two types of dispositions after default:  sales pursuant to the U.C.C. and judicial
sales.  In Hubbard v. Lagow, the Austin Court of Appeals held:

The Code clearly recognizes two basic types of
sales which may be made after default.  The
first is the judicial sale, which is not subject to the Code but is
conducted under other rules of law.  The
other is nonjudicial sale by the secured party which is conducted under the
rules of the Code.  Sections 9.501(a)
& 9.504(c) (Supp.1978); 51 Tex.Jur.2d, Part 2, Secured Transactions, sec.
305 (1970).  The nonjudicial sale is
freely permitted and may be either public or private, the choice of remedies
resting in the secured party.  51
Tex.Jur.2d, Part 2, Secured Transactions, secs. 315 & 305 (1970).

 

576 S.W.2d 163, 166 (Tex. Civ.
App.—Austin 1979, writ ref’d n.r.e.).  

            When
Gillespie elected[10]
to sell the collateral at a private sale instead of abiding by the terms of the
Abstracted Judgment,[11]
Gillespie necessarily elected to proceed under former Section 9.102 of the
U.C.C. (in effect at the time of the private sale), which provided as follows:

            (a)        Except as otherwise provided in Section
9.104 on excluded transactions, this chapter applies

                        (1)        to any transaction (regardless of its
form) which is intended to create a security interest in personal property or
fixtures including goods . . . .

 

Act of May 25, 1997, 75th Leg.,
R.S., ch. 930, 1997 Tex. Gen. Laws 2926, 2926–27 (amended 1999) (current
version at Tex. Bus. & Com. Code
Ann. § 9.109 (Vernon 2011)). 
Gillespie has not made any allegation (either at trial or on appeal)
that any of the exclusions contained in former Section 9.104 apply to the facts
of this case.[12]


            Gillespie
has failed to provide this Court with any authority that the U.C.C. does not
apply when a judgment of foreclosure is obtained, but the terms of the judgment
are not followed.  We note the U.C.C.
version in force at the time stated that it did not supplant common law “unless
displaced by the particular provisions of this title.”  See
Act of May 25, 1967, 60th Leg., ch. 785, § 1, 1967 Tex. Gen. Laws 2343 (amended
1999) (current version at Tex. Bus.
& Com. Code Ann. § 1.103 (Vernon 2009)).  The U.C.C. pre-empts the common law if the
U.C.C. and the common law conflict.[13]  Because the U.C.C. prescribed the methods to
be followed in a nonjudicial sale of collateral after default, Gillespie was
obligated to follow the U.C.C., not pre-existing common law.  We conclude that under the facts of this
case, the U.C.C. governed the private sale of the bulldozer and the retention
of the track hoe.

V.        The Retention of the
Track Hoe Bars Recovery on the Delinquency

            Williams
claims that Gillespie violated the U.C.C. in three ways.  Williams argues that:  (1) Gillespie failed to provide adequate
notice of the private sale; (2) there was a failure by Gillespie to establish
that the sale was commercially reasonable; (3) Gillespie failed to provide
adequate notice of his intent to retain the track hoe.  As a result of these things, Williams
contends, Gillespie’s retention of the track hoe prevented him from collecting
any deficiency.  In response, Gillespie
contends that the evidence is sufficient to support the trial court’s findings
that reasonable notice of the private sale and retention was provided.[14]

            It
is uncontested that Gillespie elected to retain the track hoe and Gillespie
testified he still has it in his possession, using it occasionally.  As stated above, Gillespie testified he had
left the track hoe for sale for approximately two years, but, after no
sufficient offers to purchase were received, elected to keep the track hoe for
himself in lieu of a sale to an outsider to the transaction and allowed
Williams credit for $11,500.00, effective June 30, 1998.  

            At
the time this transaction took place, a secured creditor could retain
collateral under the U.C.C. only if the secured creditor elected to retain the
collateral in full satisfaction of the debt. Section 9.505(b)––then in effect––provided
that “a secured party in possession may, after default, propose to retain the collateral
in satisfaction of the obligation.”[15]  Section 9.501(c) provided “the rules stated
in the subsections referred to below may not be waived or varied . . . .”[16]  In Tanenbaum,
the Texas Supreme Court ruled that retention of secured collateral was a
complete bar against a secured creditor collecting a deficiency.  Tanenbaum
v. Economics Lab., Inc., 628
S.W.2d 769, 771 (Tex. 1982) (rejecting concept of rebuttable presumption).[17]  The Texas Supreme Court stated, “Within
Section 9.505, there is no provision allowing the creditor to sue for a
deficiency after he retains the collateral.”  Id. at
771.  The Dallas Court of Appeals has
explained Tanenbaum as follows:

The legislative intent behind sections 9.504 and
9.505, as interpreted by the Supreme Court in Tanenbaum, is to put the creditor to an election.  He must either sell the repossessed collateral
under section 9.504 or retain the property in complete satisfaction of the debt
pursuant to section 9.505.

 

Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp., 749
S.W.2d 915, 918 (Tex. App.—Dallas 1988, no writ).  Under the law in effect at the time,
Gillespie’s retention of collateral was a complete bar to recovery on any
deficiency.  See Tanenbaum, 628 S.W.2d
at 771; Whirlybirds Leasing Co., 749
S.W.2d at 918; Gordon & Assocs. v.
Cullen Bank/Citywest, N.A., 880
S.W.2d 93, 98 (Tex. App.—Corpus Christi 1994, no writ).  Because we agree with Williams’ argument that
retention of the track hoe bars collection of any deficiency, we do not address
Williams’ remaining arguments concerning any deficiency owed to Gillespie.

VI.       The Abstracted Judgment
Has Been Satisfied

            Williams
raised the doctrine of accord and satisfaction in his second amended
answer.  Since Gillespie’s retention of
the track hoe was a complete bar to the recovery of any deficiency, the Abstracted
Judgment had been satisfied prior to this lawsuit.  “Under the one satisfaction rule, a plaintiff
is entitled to only one recovery for any damages suffered.”  Crown
Life Ins. Co. v. Casteel, 22 S.W.3d 378, 390 (Tex. 2000).  When Gillespie’s security interest was
satisfied under the U.C.C. by retaining the track hoe, the Abstracted Judgment
(which was based on the same security interest) was satisfied.  No further recovery can be obtained based on
the Abstracted Judgment.  The trial court
erred in rendering judgment in favor of Gillespie.

VII.     Williams Is Not Entitled to
Relief on Counterclaim

            In
his prayer to this Court, Williams requests a reversal and rendition in part
and a reversal and remand in part. 
Williams asks that we remand the case to the trial court for the purpose
of (1) determining if appellee should be “ordered to execute and deliver
to Appellant a release of judgment and lien in recordable form,” (2)
determining “Appellant’s right to a declaratory judgment,” and (3) determining
“if Appellant is entitled to recover compensation or damages, and the amount
thereof, for his delivery of goods and services to Appellee.”  All of Williams’ issues and his argument
concern Gillespie’s cause of action.  In
his second amended answer, Williams requested a take-nothing judgment.  Although Williams requested the
above-mentioned relief in his counterclaim, Williams did not file a separate
point of error on appeal concerning the trial court’s denial of his
counterclaim.  No authority or argument
is made on the above three requests for relief. 
In a civil case, this Court is prohibited from addressing unassigned
error.  See Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998).  In order for error to be assigned for our
review, the error must be raised in a point of error or issue.  Tex.
R. App. P. 38.1(f).  Although
points of error should be liberally construed “in order to obtain a just, fair
and equitable adjudication of the rights of the litigants,”[18]
Williams does not present any argument concerning the denial of his counterclaim
in any of the issues that were assigned for our review and does not provide any
authority.  See Tex. R. App. P.
38.1(i).  Merely requesting relief in a
prayer or conclusion is insufficient to assign the error, if any, for our
review.  See Kenneth Leventhal & Co. v. Reeves, 978 S.W.2d 253, 259
(Tex. App.––Houston [14th Dist.] 1998, no writ).  Without error being assigned for our review,
we are prohibited from remanding for any relief on Williams’ counterclaim.  

VIII.    Conclusion

            When Gillespie elected to sell the
bulldozer and track hoe through a private sale instead of abiding by the terms
of the judgment, Gillespie elected to proceed under the requirements of the
U.C.C.  Under the U.C.C. in effect at the
time, Gillespie’s retention of the track hoe had the effect of satisfying the
remaining debt in full.  Because
Gillespie’s retention of the track hoe barred any recovery of a deficiency
(because there was then none), the Abstracted Judgment had been satisfied and
the trial court erred in foreclosing the judgment lien on the real
property.  

            On
appeal, Williams raised no issues concerning his counterclaim.  Thus, if there was any error committed by the
trial court in denying Gillespie’s counterclaim, it is not assigned for our
review.  We reverse the judgment of the
trial court and render a take-nothing judgment in favor of Mike and Kathy
Williams.  

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April
12, 2011

Date Decided:             May
13, 2011

 











[1]The
real property in dispute consists of a 46.63-acre tract, a 5.687-acre tract,
and a 16.620-acre tract.  

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.

 





[3]Williams
does not raise any issue on appeal concerning the failure to deliver the writ
to the executing officer. Williams also does not complain, on appeal, about any
of the procedures used to maintain the validity of the Abstracted Judgment.





[4]Gillespie
showed up at Williams’ worksite and Williams relinquished possession.  Williams testified Gillespie had promised to
release him from the money owed if he returned the equipment.  

 





[5]In
the testimony at trial, the value of the track hoe, at the time it was
repossessed, was disputed.  

 





[6]No
issue was raised concerning the issuance of a new abstract of judgment without
having first had a writ of execution issued and returned unsatisfied.

 





[7]The
three tracts of land were located in Nacogdoches County.  Williams does not raise any issue on appeal
concerning any defect in the issuance of the abstract of judgment due to the
failure to deliver the writ to an officer who could execute it.





[8]At
trial, Gillespie argued the security lien had merged into the judgment, thereby
negating the application of the U.C.C. 
On appeal, Gillespie did not brief this argument, other than citing Taylor v. Tillotson, which contains the
following statement:

 

The
lien evidenced by the chattel mortgage was merged into the judgment. The lien
had been absorbed by the foreclosure, and to that appellant was compelled to
look and did look for the collection of his debt, and not to the mortgage lien
which had served its purpose.

 

272 S.W. 323, 325 (Tex. Civ. App.––San
Antonio 1925, writ dism’d).  The Taylor case is not analogous to the case
at bar.  While the above quotation is
contained in the Taylor opinion, the
quotation is merely dicta.  Taylor concerned the effect of a
security interest when the collateral was subsequently purchased, in good faith
and without notice, by a third party.  Id. 
Resolution of the Taylor case
depended on the means by which a notice of a lien was perfected under the
then-existing laws.  Further, in the
intervening eighty-six years of Texas jurisprudence, Taylor has been cited only three times in reported cases, none of
which relied on it as the authority for the position now taken by
Gillespie.  See Billingsley v. Mossler Acceptance Co., 119 S.W.2d 196, 199
(Tex. Civ. App.––El Paso 1938, no writ); Evans
v. First Nat’l Bank of Mt. Vernon, 65 S.W.2d 366, 368 (Tex. Civ. App.—Texarkana
1933, no writ); A. H. Karcher & Co.
v. Davis, 278 S.W. 302, 303 (Tex. Civ. App.––Austin 1925, writ dism’d).  We further note that Gillespie would have
been ill served to have the contractual lien extinguished by the entry of the
judgment of foreclosure.  Because he had
not followed the terms of the judgment, Gillespie, if the contractual lien had
been subsumed in the judgment lien, would no longer have any right to seize or
dispose of the collateral.





[9]Williams
testified that he was unaware the bulldozer and track hoe had been placed in
front of Gillespie’s sawmill for sale. 
Williams testified he never saw the bulldozer for sale at the sawmill.  Although he saw the track hoe at the sawmill,
the track hoe was not parked where Gillespie normally sold equipment.  





[10]Section
9.501 provides the creditor’s remedies are cumulative.  See
Act of May 25, 1967, 60th Leg., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2548
(amended 1999) (current version at Tex.
Bus. & Com. Code Ann. § 9.601 (Vernon 2011)); see also Stephens v. LPP Mortgage Ltd., 316 S.W.3d 742, 747–78
(Tex. App.––Austin 2010, pet. denied); Cohen
v. Rains, 769 S.W.2d 380, 384–85 (Tex. App.—Fort Worth 1989, writ denied) (“When
a debtor is in default a secured party is not required to elect which of these
rights he wishes to pursue--he ‘may take any permitted action or combination of
actions.’”); Hubbard, 576 S.W.2d at
165.  

 





[11]Although
the parties might have recognized that a private sale may have resulted in the
realization of a better price for the collateralized equipment than might have
been received under a judicial sale, a party must abide by the terms of a
judgment if the party wishes to receive the benefits and protections of that
judgment.  

 





[12]Former
U.C.C. Section 9.104 contains a list of transactions excluded from the
requirements of the U.C.C.  See Act of May 24, 1973, 63rd Leg.,
R.S., ch. 400, § 5,
1973 Tex. Gen. Laws 999, 1002–03 (amended 1999) (current version at Tex. Bus. & Com. Code Ann. §
9.109).  

 





[13]See T.O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 223 (Tex. 1992); Bryan v. Citizens Nat’l Bank in Abilene,
628 S.W.2d 761, 764 (Tex. 1982); Wolf
Hollow I, L.P. v. El Paso Mktg., L.P., 329 S.W.3d 628, 637 (Tex.
App.––Houston [14th Dist.] 2010, pet. filed); AMX Enters., Inc. v. Bank One, N.A., 196 S.W.3d 202, 207 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied); Mazon Assocs., Inc. v. Comerica Bank, 195 S.W.3d 800, 804–05 (Tex.
App.––Dallas 2006, no pet.); Bank One, Tex.,
N.A. v. Little, 978 S.W.2d 272, 277 (Tex. App.—Fort Worth 1998, pet. denied);
Hubbard, 576 S.W.2d at 165.





[14]On
appeal, Gillespie argues Tex. Bus. &
Com. Code Ann. § 9.620 (Vernon 2011) (the current applicable section of
the U.C.C. which became effective on July 1, 2001), should apply to the
repossession of the track hoe which occurred sometime during the month of April
or May 1998.  Gillespie argues, because
he testified the track hoe remained for sale for “[o]ver two years, probably
three,” the current section of the U.C.C.—which permits retention of collateral
as partial satisfaction of the debt—should apply.  Gillespie’s legal theory would require a
number of fact findings, which the trial court did not make, including (but not
limited to) a determination as to when the retention occurred and whether the
requirements of Tex. Bus. & Com.
Code Ann. § 9.620 were then met. 
We further note there is no evidence in the record that the requirements
of Tex. Bus. & Com. Code Ann.
§ 9.620, were met.  Second, Gillespie
failed to provide appropriate citations to authorities, including the
application of the transition provisions contained in Tex. Bus. & Com. Code Ann. §§ 9.701–.709 (Vernon 2011).  See
Tex. R. App. P. 38.1(i).  Gillespie’s argument consists solely of the
following sentence:  “If the U.C.C. does
apply (which Appellee contends it does not) and the decision/agreement was made
by Appellee two to three years after the judgment (as stated in Appellants’
Brief, page 12), then the 1998 U.C.C. §9.505
is not applicable, but the 2001 U.C.C. would be applicable (§§9.701 [Appendix 6],
9.601 et seq).”  Last, Gillespie has
failed to preserve error.  An appellee,
when complaining that the trial court erred, must preserve error for appellate
review.  See Tex. R. App. P.
33.1; Tubb v. Vinson Exploration, Inc.,
892 S.W.2d 183, 185 (Tex. App.––El Paso 1994, writ denied); Ayotte v. Central Education Agency, 729
S.W.2d 385, 388 (Tex. App.––Austin 1987, no writ).  Gillespie did not present this argument to the
trial court and, thus, waived it.  See Tex.
R. App. P. 33.1.  Gillespie’s
arguments at trial were:  (1) the U.C.C.
did not apply to this case, because a default judgment had been obtained, and,
alternatively, (2) proper notice had been provided and a commercially
reasonable sale had occurred under the version of the U.C.C. in effect in
1998.  Gillespie’s argument that Tex. Bus. & Com. Code Ann. § 9.620
applies to this case is not preserved for appellate review.





[15]Act
of May 10, 1977, 65th Leg., R.S., ch. 163, 1977 Tex. Gen. Laws 333, 333–35
(amended 1999) (current version at Tex.
Bus. & Com. Code Ann. § 9.620). 


 





[16]See Act of May 24, 1973, 63rd Leg.,
R.S., ch. 400, § 5,
1973 Tex. Gen. Laws 999, 1026–27 (amended 1999) (current version at Tex. Bus. & Com. Code Ann. § 9.624
(Vernon 2011)).  We note former Section
9.501(c) contained a few limited exceptions. 
Gillespie does not argue that any of the exceptions apply to this case.

 





[17]The
1999 legislative changes subsequently overruled Tanenbaum’s complete bar rule with respect to commercial transactions
and effectively adopted the rebuttable presumption theory.  See Tex. Bus. & Com. Code Ann. § 9.626(a)(3),
(4) (Vernon 2011).  At the time Gillespie
repossessed the collateral, however, Tanenbaum
controlled.





[18]Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989).