## TAYLOR et al. v. TILLOTSON et al. (No. 7333.)

(Court of Civil Appeals of Texas. San Antonio. April 1, 1925. Rehearing Denied May 13, 1925.)

**1. Chattel mortgages ⬅50(2)—Filing chattel mortgage in one county not constructive notice in another.**

Filing of chattel mortgage in one county *held* not constructive notice of lien in another county.

**2. Chattel mortgages ⬅153—One giving negotiable note is purchaser for value.**

Purchaser of mortgaged property without actual or constructive knowledge of mortgage or its foreclosure, who gave negotiable note for property, is purchaser for value, notwithstanding he discovered existence of foreclosure judgment before his note had been paid.

**3. Fraudulent conveyances ⬅160—Purchaser giving note must have paid it to be entitled to claim as purchaser for value.**

Purchaser who gave note in payment of goods sold by his immediate vendor in fraud of creditors must have actually paid his note to maintain defense of innocent purchaser.

**4. Chattel mortgages ⬅153, 283—Mortgagee had only a lien; purchaser without knowledge of mortgage or foreclosure judgment lien gets good title.**

Where unrecorded chattel mortgage had been foreclosed, but sale thereunder had not been made, mortgagee did not get legal title, but only a lien on property, and title passed to a purchaser from the mortgagor without notice of lien.

**5. Chattel mortgages ⬅283—Chattel mortgage lien merged into judgment on foreclosure.**

The lien evidenced by chattel mortgage becomes merged into judgment of foreclosure to which mortgagee must look for collection of debt, and not to mortgage lien.

**6. Bills and notes ⬅167—Note not mentioning mortgage security is negotiable.**

Note not mentioning mortgage or in any way indicating that it was secured by a lien was negotiable.

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by M. D. Taylor and others against J. H. Tillotson and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Will Glover, of Uvalde, for appellants.

Ditzler H. Jones and W. D. Love, both of Uvalde, for appellees.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

FLY, C. J. This is an appeal from a judgment rendered in a case of a trial of the right of property instituted through a claimant's affidavit filed by J. H. Tillotson, who set up a claim to certain 230 head of stock goats, brand and marks given, which were levied upon by G. H. Johnson, sheriff of Uvalde county, by virtue of an order of sale issued out of the district court of Real county, in a case wherein the State Bank of Barksdale recovered judgment against C. J. Blair, M. D. Taylor, and B. E. Smith for $955.68, with a foreclosure of a lien on said goats. The claimant's bond was signed by J. H. Tillotson, as principal, and Ed. Bell, W. A. Hicks, and C. E. Freeman, as sureties. The property was valued by the sheriff at $1,000. M. D. Taylor, for himself and for the State Bank of Barksdale, filed a pleading in which he represented that on December 5, 1922, the State Bank of Barksdale obtained a judgment in the district court of Real county against C. J. Blair, M. D. Taylor, and B. E. Smith for the sum of $955.68, and a foreclosure on 225 head of stock goats branded U under each eye, and with certain earmarks, and 220 head of stock goats branded U under each eye "in various marks and brands," being the property of C. H. Blair; and said goats were ordered to be sold to satisfy the judgment. In that case it was also ordered that M. D. Taylor, who was an indorser of the note that evidenced the debt, recover over against C. J. Blair for any sum collected from said M. D. Taylor. The goats, it was alleged, were seized, under an order of sale, by the sheriff of Real county, but sale of the goats was prevented by the prosecution of an appeal by C. J. Blair. It was further alleged by Taylor that the appeal was dismissed, and Taylor paid to the State Bank of Barksdale the amount of the judgment, interest, and costs, and the judgment was assigned to said Taylor, and afterwards C. J. Blair fraudulently sold and delivered the goats either to the Real County State Bank, the First State Bank of Leakey, or to Ed. Bell, who took possession of the goats and moved them to Uvalde county. It was further alleged that Taylor then caused an execution and order of sale directed to the sheriff of Uvalde county, who levied upon said goats and was prevented from selling the same by the claimant's oath and bond filed by J. H. Tillotson. Taylor prayed for judgment against Tillotson and his sureties on the claimant's bond in the sum of $2,000. Tillotson pleaded that he had on June 1, 1923, purchased 181 goats and 23 kids, with certain earmarks and branded U under each eye, from the First State Bank of Leakey, which were the same levied on by the sheriff of Uvalde county, and to which he had filed a claimant's affidavit and bond, and that he was a purchaser for value in good faith without notice of any lien on said goats. The cause was heard by the court without a jury, and judgment was rendered that appellant take nothing by his suit, and the order of sale and levy on the goats were set aside, and title to the goats was confirmed in Tillotson.

[1] The evidence showed that the goats in controversy were the property of C. J. Blair. On July 27, 1921, Blair gave a mortgage on the goats to secure a certain promissory note of even date therewith for the sum of $764.75. That mortgage was filed for record on August 10, 1921, in the office of the county clerk of Real county, where Blair lived, and where the goats were in his possession. The note secured by the mortgage was due on October 27, 1921, and was payable to M. D. Taylor. On December 5, 1922, judgment was rendered in the district court of Real county against M. D. Taylor, B. E. Smith, and C. J. Blair for $955.68, and a lien was foreclosed on the goats. Blair moved the goats from Real county, where the mortgage was on file to Uvalde county, where no mortgage on the goats was ever filed by Taylor. The claimant of the goats, Tillotson, had no notice actual or constructive of any claim against or lien upon the goats.

[2] Record of the chattel mortgage in Real county was not constructive notice to a purchaser of the goats in Uvalde county. Tillotson had no actual notice of the existence of a chattel mortgage filed for registration in Real county, nor of a foreclosure of such lien in the judgment obtained in a suit by the State Bank of Barksdale against Taylor, Smith, and Blair. Tillotson was a purchaser for value from the Leakey bank, as he gave a negotiable note for the goats. There was nothing in the note that deprived it of its negotiable character. It had a fixed due date and filled the requirements of the law as to negotiable paper. There is no provision in the note permitting the payee to declare it due, for any reason, before its due date. The only ones affected by the contemporaneous agreement would be those who had notice of such agreement, and the negotiability of the note would not be destroyed by the agreement, no more than notice of a prior agreement of any kind might influence the bona fides of a purchaser. It would be a matter going to the good faith of the purchaser of the note, and not to the negotiable character of the same. Daniel Neg. Instr. § 156.

It is the contention of appellant that, as the note had not been paid when Tillotson became aware of the existence of the judgment and was still in the hands of the payee, there was no valuable consideration. The only authority cited that can be construed as sustaining that proposition is 35 Cyc. 352, which cites in its support certain cases by the Missouri Appeals, not accessible, and Moline Plow Co. v. Blackburn, 74 Neb. 246, 104 N. W. 178. The opinion in the last-named case, while the argument would seem to lead

to the conclusion of the text, closes with the declaration:

"But in this case, whether the defendant's notes were negotiable or not, it is certain that they never were negotiated. Whether, in the latter case, that fact would affect the result, we are not called upon now to decide."

We do not consider the obiter dictum in the case as authority.

In the case of Tillman v. Heller, 78 Tex. 597, 14 S. W. 700, 11 L. R. A. 628, 22 Am. St. Rep. 77, the general rule is announced as follows:

"The rule we think universal that a grantee under a junior deed in order to hold land as a bona fide purchaser for value must show that the consideration has been actually paid, or that he has given a negotiable note therefor, which in this court at least is deemed equivalent to the same thing."

[3] The only exception to the rule given by the court is where the purchaser is setting up the defense of innocent purchaser, where the sale was made by the seller in fraud of creditors. In that case there must be actual payment. See, also, Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 399, writ of error refused; Security Bank v. Foster (Tex. Civ. App.) 249 S. W. 227. In case of fraud the party committing the act in fraud of creditors must be the immediate vendor of the party whose bona fides is to be affected.

This case shows utter neglect on the part of M. D. Taylor to follow up the foreclosure of the lien on the goats. The judgment was obtained on December 5, 1922, and an order of sale was issued to Real county on January 6, 1923, and was returned not satisfied. No further action was taken until June 27, 1923, when an order of sale or execution was issued to Uvalde county. For six months the goats had been out of Real county and no effort was shown to locate them and have them seized under the judgment of foreclosure. The mortgage had been merged into the judgment, and appellant had the power of the law back of him by which to take possession of the property. This laches did not destroy his lien, but it gave an opportunity to the man rightfully in possession of the goats to dispose of them to another who knew nothing about the circumstances surrounding the possession of the mortgagor.

[4] Appellant seeks to apply the rule that prevails when stolen property is purchased, which is not applicable to the facts of this case. The goats did not belong to appellant, but he only had a lien on them. The legal title was still in Blair when he sold the goats in Uvalde county. If bought for a valuable consideration without notice of the lien on them, title passed to the purchaser. Soell v. Hadden, 85 Tex. 188, 19 S. W. 1087; Hughes v. Smith, 61 Tex. Civ. App. 443, 129 S. W. 1142.

[5] The lien evidenced by the chattel mortgage was merged into the judgment. The lien had been absorbed by the foreclosure, and to that appellant was compelled to look and did look for the collection of his debt, and not to the mortgage lien which had served its purpose. Ayres v. Cayce, 10 Tex. 100. Tillotson had no knowledge, actual or constructive, of the existence of the judgment lien.

[6] The promissory note given by Tillotson to the First State Bank of Leakey did not mention the mortgage or in any way indicate that it was secured by a lien. On its face it complied with the law on negotiable instruments and was a negotiable instrument, and any purchaser of it would be an innocent purchaser, unless it had been shown that notice had been received of the recitals in the mortgage.

The judgment is affirmed.