

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00054-CV

_____

MIKE WILLIAMS AND WIFE, KATHY WILLIAMS, Appellants

V.

LLOYD GILLESPIE, Appellee

On Appeal from the 145th Judicial District Court
Nacogdoches County, Texas
Trial Court No. C08-24,677

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This case, arising in Nacogdoches County, concerns a suit by Lloyd Gillespie, seeking a decree permitting the foreclosure through a writ of execution of an alleged judgment lien against real property owned by Mike Williams and his wife, Kathy Williams.[1] The judgment lien arose from a default judgment taken by Lloyd Gillespie solely against Mike Williams (hereafter individually referred to as Williams).

In 1995, Williams had purchased heavy equipment (a bulldozer and a track hoe) on credit from Gillespie. Williams defaulted on the loan in 1998 and Gillespie brought suit in the Nacogdoches County Court at Law,[2] obtaining a default judgment (herein referred to as Abstracted Judgment) awarding him $67,793.22 on the note and $8,535.00 in attorney's fees, and ordering the equipment to be sold at a public sale. A writ of execution incorporating a copy of the judgment, although obtained through the Office of the Nacogdoches County Clerk, was never delivered to an officer authorized to serve it.[3] Rather, Gillespie took it in hand and, approximately two to three weeks after the judgment was signed, informed Williams of its existence. Williams, having been given knowledge of the writ, voluntarily relinquished the

---

[1]The real property in dispute consists of a 46.63-acre tract, a 5.687-acre tract, and a 16.620-acre tract.

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]Williams does not raise any issue on appeal concerning the failure to deliver the writ to the executing officer. Williams also does not complain, on appeal, about any of the procedures used to maintain the validity of the Abstracted Judgment.

bulldozer and track hoe to Gillespie.[4]   Gillespie testified that Williams agreed, in lieu of a public sale by the sheriff, to allow Gillespie to sell the equipment by private sale in an attempt to maximize the sales price and, thus, reduce Williams' debt as much as possible.   Gillespie placed the equipment in front of his sawmill and eventually sold the bulldozer in a private sale for $35,000.00, the full amount that Williams had originally paid to Gillespie for its purchase. Although Gillespie attempted to sell the track hoe in the same manner (i.e., parking it in public view in front of his sawmill), he was never able to obtain what he believed was a reasonable price for it, and it was never sold.   Gillespie testified the highest offer he received for the purchase of the track hoe was $10,000.00.   After the track hoe sat unsold for two to three years, Gillespie finally credited Williams with $11,500.00[5] toward satisfaction of the judgment and retained it for his own use. During the intervening years, Williams made a few intermittent payments on the judgment debt in the form of lumber and gravel delivered to Gillespie's sawmill.

Several months after the default judgment was entered, Gillespie caused an abstract of the judgment to be issued and filed it in the Office of the Nacogdoches County Clerk.   A little over nine years later, Gillespie filed a second abstract of the judgment and a second writ of execution was issued.[6]   The record contains a letter indicating that the second writ of execution was mailed

---

[4]Gillespie showed up at Williams' worksite and Williams relinquished possession.   Williams testified Gillespie had promised to release him from the money owed if he returned the equipment.

[5]In the testimony at trial, the value of the track hoe, at the time it was repossessed, was disputed.

[6]No issue was raised concerning the issuance of a new abstract of judgment without having first had a writ of execution issued and returned unsatisfied.

3

to the Angelina County Sheriff.[7]   Several months later, Gillespie filed suit in the District Court of Nacogdoches County to foreclose the judgment lien on several pieces of nonexempt real property owned jointly by both Williams and his wife, based on the Abstracted Judgment.   In his second amended answer, Williams requested a take-nothing judgment.   In his counterclaim, Williams requested damages of $19,773.45 and a declaration that the Abstracted Judgment creates "no lien or security interest as to any property of Mike Williams *et ux*, Kathy Williams."   At trial, Williams argued the default judgment had been satisfied because Chapter 9 of the Texas Business and Commerce Code (herein referred to as the U.C.C.) applied to the private sale of the bulldozer and the retention of the track hoe and, because Gillespie violated various provisions of Chapter 9, there is no longer any debt owed.   The trial court found that the U.C.C. does not apply to this case and ordered that the nonexempt real property be sold at a public sale to satisfy the Abstracted Judgment.   Williams has appealed.

## I.    A Judicial Foreclosure Sale Did Not Occur

The Abstracted Judgment authorized an officer to seize the bulldozer and track hoe and sell them pursuant to a public sale.   The judgment provides:

> It is further ORDERED by the Court that an order of sale issue to *any sheriff or constable in the State of Texas* to seize and sell the above-described property the same as under execution in satisfaction of this judgment. *The sheriff or other*

---

[7]The three tracts of land were located in Nacogdoches County.  Williams does not raise any issue on appeal concerning any defect in the issuance of the abstract of judgment due to the failure to deliver the writ to an officer who could execute it.

4

*officer executing the order of sale* shall place the purchaser of the above-described property in possession within 30 days after the date of sale.

(Emphasis added.) There is no authorization in the judgment for the conduct of a private sale. A valid sale under a judgment occurs only when there is strict compliance with the terms of the foreclosure judgment. *Kolbo v. Blair*, 379 S.W.2d 125, 130 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.); *see Clint Indep. Sch. Dist. v. Cash Invs., Inc.*, 970 S.W.2d 535, 540 (Tex. 1998). Because Gillespie did not comply with the terms of the judgment, the sale of the bulldozer and track hoe was not a judicial foreclosure sale.

## II.  Gillespie Did Not Establish a Judicial Lien on the Secured Personal Property

Gillespie alternatively argues that he perfected a judgment lien on the collateral. The trial court concluded that the U.C.C. did not apply to the private sale of the bulldozer or to the retention of the track hoe. We review de novo a trial court's conclusions of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A judgment lien, though, is not created until a levy of execution occurs. *See Tex. Employers' Ins. Ass'n v. Engelke*, 790 S.W.2d 93, 95 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding [leave denied]); *Herndon v. Cocke*, 138 S.W.2d 298, 300 (Tex. Civ. App.—El Paso 1940, no writ). The First District Court of Appeals has explained:

> A valid levy of an execution creates a lien on the debtor's property in favor of the judgment creditor, which in the case of personal property is prima facie evidence of satisfaction of the execution. This lien is effective from the time of the levy and continues in effect until it is lost or abandoned, or in some way ceases to have vitality and effect.

5

*Tex. Employers' Ins. Ass'n*, 790 S.W.2d at 95 (citations omitted). Because the writ of execution was never delivered to an authorized officer, no valid levy of execution occurred. The property was never seized by an officer authorized to execute the writ. Thus, no judgment lien attached. Because Gillespie failed to strictly comply with the terms of the judgment and no levy of execution occurred, the Abstracted Judgment did not authorize Gillespie's sale of the bulldozer and retention of the track hoe.

## III. The Abstracted Judgment Was Not Modified by Agreement

Gillespie argues that we should affirm the trial court because there is sufficient evidence to support a conclusion that Williams agreed to the private sale.[8] While Gillespie did not clearly

---

[8]At trial, Gillespie argued the security lien had merged into the judgment, thereby negating the application of the U.C.C. On appeal, Gillespie did not brief this argument, other than citing *Taylor v. Tillotson*, which contains the following statement:

> The lien evidenced by the chattel mortgage was merged into the judgment. The lien had been absorbed by the foreclosure, and to that appellant was compelled to look and did look for the collection of his debt, and not to the mortgage lien which had served its purpose.

272 S.W. 323, 325 (Tex. Civ. App.—San Antonio 1925, writ dism'd). The *Taylor* case is not analogous to the case at bar. While the above quotation is contained in the *Taylor* opinion, the quotation is merely dicta. *Taylor* concerned the effect of a security interest when the collateral was subsequently purchased, in good faith and without notice, by a third party. *Id*. Resolution of the *Taylor* case depended on the means by which a notice of a lien was perfected under the then-existing laws. Further, in the intervening eighty-six years of Texas jurisprudence, *Taylor* has been cited only three times in reported cases, none of which relied on it as the authority for the position now taken by Gillespie. *See Billingsley v. Mossler Acceptance Co*., 119 S.W.2d 196, 199 (Tex. Civ. App.—El Paso 1938, no writ); *Evans v. First Nat'l Bank of Mt. Vernon*, 65 S.W.2d 366, 368 (Tex. Civ. App.—Texarkana 1933, no writ); *A. H. Karcher & Co. v. Davis*, 278 S.W. 302, 303 (Tex. Civ. App.—Austin 1925, writ dism'd). We further note that Gillespie would have been ill served to have the contractual lien extinguished by the entry of the judgment of foreclosure. Because he had not followed the terms of the judgment, Gillespie, if the contractual lien had been subsumed in the judgment lien, would no longer have any right to seize or dispose of the collateral.

explain how such an agreement would affect the law governing this case, we have interpreted his argument to be that the parties agreed to modify the terms of the judgment to permit a private sale.

We first note that the issue of whether Williams agreed to the private sale was disputed at trial. Gillespie testified, "Mr. Williams and I agreed that it would be cheaper and better if I took the equipment and did my best to sell it and give him credit on the judgment." Gillespie later explained,

> We both agreed. We talked about it twice at two different meetings. And, we both agreed that I would pick it up, and take it and put it up for sale and try to get the highest dollar I could for it. And, he didn't have any problems with it. He agreed it to [sic]. We discussed it. I don't remember the exact words that were used, but it was an agreement between us to do that.

Williams testified that Gillespie promised to release the debt in exchange for the return of the bulldozer and track hoe. Williams also denied ever discussing with Gillespie whether the bulldozer and track hoe would be sold at a private sale with Gillespie.[9]

The trial court, however, did not make any finding of fact concerning whether the parties, by agreement, elected to enforce the original judgment through a private sale instead of the public sale ordered in the judgment. Williams requested and obtained findings of fact and the entirety of the response to that request follows:

1. The Default Judgment in this case is valid.
2. Section 9.504 of the UCC/BCC is not applicable to this case because the judgment had already occurred.

---

[9]Williams testified that he was unaware the bulldozer and track hoe had been placed in front of Gillespie's sawmill for sale. Williams testified he never saw the bulldozer for sale at the sawmill. Although he saw the track hoe at the sawmill, the track hoe was not parked where Gillespie normally sold equipment.

3. The three pieces of land are subject to foreclosure because they are not homestead and they are not encumbered by liens.
4. Notice of the sale, although verbal, was reasonable.
5. The collateral, the D-4 and Trackhoe, were disposed of in a commercially reasonable manner.

When findings of fact have been made, the judgment may not be supported by an implied finding on any ground of recovery, or defense, of which no element has been included in the court's findings. TEX. R. CIV. P. 299; *Leonard v. Eskew*, 731 S.W.2d 124, 132–33 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Uhlhorn v. Reid*, 398 S.W.2d 169, 176 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.). When findings of fact are obtained, they define and limit the issues upon which this Court can affirm. We cannot affirm the trial court's judgment based on a theory on which the trial court failed to make any of the necessary factual findings.

Irrespective of whether there was an oral agreement between the parties, we are not persuaded that the oral agreement at issue here can modify the terms of the Abstracted Judgment. An out-of-court oral agreement qualifies neither as a written settlement agreement nor as a Rule 11 agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.071 (Vernon 2011); TEX. R. CIV. P. 11; *see also Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007) (oral settlement agreement not enforceable unless made in court and entered of record). Gillespie has not provided this Court with any authority that the terms of a judgment can be modified by an oral agreement of the parties made out of court.

8

## IV.    The Trial Court Erred in Concluding the U.C.C. Did Not Apply

Williams contends that the trial court erred in concluding the U.C.C. did not apply to the private sale of the bulldozer and track hoe.   Because the bulldozer and track hoe were not sold pursuant to the terms of the judgment, Williams argues the U.C.C. must apply.   We agree.

Texas recognizes only two types of dispositions after default:   sales pursuant to the U.C.C. and judicial sales.   In *Hubbard v. Lagow*, the Austin Court of Appeals held:

> The Code clearly recognizes two basic types of sales which may be made after default.   The first is the judicial sale, which is not subject to the Code but is conducted under other rules of law.   The other is nonjudicial sale by the secured party which is conducted under the rules of the Code.   Sections 9.501(a) & 9.504(c) (Supp.1978); 51 Tex.Jur.2d, Part 2, Secured Transactions, sec. 305 (1970).   The nonjudicial sale is freely permitted and may be either public or private, the choice of remedies resting in the secured party.   51 Tex.Jur.2d, Part 2, Secured Transactions, secs. 315 & 305 (1970).

576 S.W.2d 163, 166 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.).

When Gillespie elected[10] to sell the collateral at a private sale instead of abiding by the terms of the Abstracted Judgment,[11] Gillespie necessarily elected to proceed under former Section 9.102 of the U.C.C. (in effect at the time of the private sale), which provided as follows:

---

[10] Section 9.501 provides the creditor's remedies are cumulative.   *See* Act of May 25, 1967, 60th Leg., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2548 (amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 9.601 (Vernon 2011)); *see also Stephens v. LPP Mortgage Ltd.*, 316 S.W.3d 742, 747–78 (Tex. App.—Austin 2010, pet. denied); *Cohen v. Rains*, 769 S.W.2d 380, 384–85 (Tex. App.—Fort Worth 1989, writ denied) ("When a debtor is in default a secured party is not required to elect which of these rights he wishes to pursue--he 'may take any permitted action or combination of actions.'"); *Hubbard*, 576 S.W.2d at 165.

[11] Although the parties might have recognized that a private sale may have resulted in the realization of a better price for the collateralized equipment than might have been received under a judicial sale, a party must abide by the terms of a judgment if the party wishes to receive the benefits and protections of that judgment.

(a)     Except as otherwise provided in Section 9.104 on excluded transactions, this chapter applies

(1)     to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods . . . .

Act of May 25, 1997, 75th Leg., R.S., ch. 930, 1997 Tex. Gen. Laws 2926, 2926–27 (amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 9.109 (Vernon 2011)).   Gillespie has not made any allegation (either at trial or on appeal) that any of the exclusions contained in former Section 9.104 apply to the facts of this case.[12]

Gillespie has failed to provide this Court with any authority that the U.C.C. does not apply when a judgment of foreclosure is obtained, but the terms of the judgment are not followed.   We note the U.C.C. version in force at the time stated that it did not supplant common law "unless displaced by the particular provisions of this title."   *See* Act of May 25, 1967, 60th Leg., ch. 785, § 1, 1967 Tex. Gen. Laws 2343 (amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 1.103 (Vernon 2009)).   The U.C.C. pre-empts the common law if the U.C.C. and the common law conflict.[13]   Because the U.C.C. prescribed the methods to be followed in a nonjudicial sale of

---

[12]Former U.C.C. Section 9.104 contains a list of transactions excluded from the requirements of the U.C.C.   *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 400, § 5, 1973 Tex. Gen. Laws 999, 1002–03 (amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 9.109).

[13]*See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992); *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 764 (Tex. 1982); *Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 329 S.W.3d 628, 637 (Tex. App.—Houston [14th Dist.] 2010, pet. filed); *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Mazon Assocs., Inc. v. Comerica Bank*, 195 S.W.3d 800, 804–05 (Tex. App.—Dallas 2006, no pet.); *Bank One, Tex., N.A. v. Little*, 978 S.W.2d 272, 277 (Tex. App.—Fort Worth 1998, pet. denied); *Hubbard*, 576 S.W.2d at 165.

collateral after default, Gillespie was obligated to follow the U.C.C., not pre-existing common law. We conclude that under the facts of this case, the U.C.C. governed the private sale of the bulldozer and the retention of the track hoe.

## V. The Retention of the Track Hoe Bars Recovery on the Delinquency

Williams claims that Gillespie violated the U.C.C. in three ways. Williams argues that: (1) Gillespie failed to provide adequate notice of the private sale; (2) there was a failure by Gillespie to establish that the sale was commercially reasonable; (3) Gillespie failed to provide adequate notice of his intent to retain the track hoe. As a result of these things, Williams contends, Gillespie's retention of the track hoe prevented him from collecting any deficiency. In response, Gillespie contends that the evidence is sufficient to support the trial court's findings that reasonable notice of the private sale and retention was provided.[14]

---

[14]On appeal, Gillespie argues TEX. BUS. & COM. CODE ANN. § 9.620 (Vernon 2011) (the current applicable section of the U.C.C. which became effective on July 1, 2001), should apply to the repossession of the track hoe which occurred sometime during the month of April or May 1998. Gillespie argues, because he testified the track hoe remained for sale for "[o]ver two years, probably three," the current section of the U.C.C.—which permits retention of collateral as partial satisfaction of the debt—should apply. Gillespie's legal theory would require a number of fact findings, which the trial court did not make, including (but not limited to) a determination as to when the retention occurred and whether the requirements of TEX. BUS. & COM. CODE ANN. § 9.620 were then met. We further note there is no evidence in the record that the requirements of TEX. BUS. & COM. CODE ANN. § 9.620, were met. Second, Gillespie failed to provide appropriate citations to authorities, including the application of the transition provisions contained in TEX. BUS. & COM. CODE ANN. §§ 9.701–.709 (Vernon 2011). *See* TEX. R. APP. P. 38.1(i). Gillespie's argument consists solely of the following sentence: "If the U.C.C. does apply (which Appellee contends it does not) and the decision/agreement was made by Appellee two to three years after the judgment (as stated in Appellants' Brief, page 12), then the 1998 U.C.C. §9.505 is not applicable, but the 2001 U.C.C. would be applicable (§§9.701 [Appendix 6], 9.601 et seq)." Last, Gillespie has failed to preserve error. An appellee, when complaining that the trial court erred, must preserve error for appellate review. *See* TEX. R. APP. P. 33.1; *Tubb v. Vinson Exploration, Inc.*, 892 S.W.2d 183, 185 (Tex. App.—El Paso 1994, writ denied); *Ayotte v. Central Education Agency*, 729 S.W.2d 385, 388 (Tex. App.—Austin 1987, no writ). Gillespie did not present this argument to the trial court and, thus, waived it. *See* TEX. R. APP. P. 33.1. Gillespie's arguments at trial were: (1) the U.C.C. did not apply to this case, because a default judgment had been obtained, and, alternatively, (2) proper notice had been provided and a commercially reasonable

It is uncontested that Gillespie elected to retain the track hoe and Gillespie testified he still has it in his possession, using it occasionally. As stated above, Gillespie testified he had left the track hoe for sale for approximately two years, but, after no sufficient offers to purchase were received, elected to keep the track hoe for himself in lieu of a sale to an outsider to the transaction and allowed Williams credit for $11,500.00, effective June 30, 1998.

At the time this transaction took place, a secured creditor could retain collateral under the U.C.C. only if the secured creditor elected to retain the collateral in full satisfaction of the debt. Section 9.505(b)—then in effect—provided that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation."[15] Section 9.501(c) provided "the rules stated in the subsections referred to below may not be waived or varied . . . ."[16] In *Tanenbaum*, the Texas Supreme Court ruled that retention of secured collateral was a complete bar against a secured creditor collecting a deficiency. *Tanenbaum v. Economics Lab., Inc.*, 628 S.W.2d 769, 771 (Tex. 1982) (rejecting concept of rebuttable presumption).[17] The Texas Supreme Court stated, "Within Section 9.505, there is no provision allowing the creditor to sue for

sale had occurred under the version of the U.C.C. in effect in 1998. Gillespie's argument that TEX. BUS. & COM. CODE ANN. § 9.620 applies to this case is not preserved for appellate review.

[15]Act of May 10, 1977, 65th Leg., R.S., ch. 163, 1977 Tex. Gen. Laws 333, 333–35 (amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 9.620).

[16]*See* Act of May 24, 1973, 63rd Leg., R.S., ch. 400, § 5, 1973 Tex. Gen. Laws 999, 1026–27 (amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 9.624 (Vernon 2011)). We note former Section 9.501(c) contained a few limited exceptions. Gillespie does not argue that any of the exceptions apply to this case.

[17]The 1999 legislative changes subsequently overruled *Tanenbaum*'s complete bar rule with respect to commercial transactions and effectively adopted the rebuttable presumption theory. *See* TEX. BUS. & COM. CODE ANN. § 9.626(a)(3), (4) (Vernon 2011). At the time Gillespie repossessed the collateral, however, *Tanenbaum* controlled.

a deficiency after he retains the collateral." *Id.* at 771. The Dallas Court of Appeals has explained *Tanenbaum* as follows:

> The legislative intent behind sections 9.504 and 9.505, as interpreted by the Supreme Court in *Tanenbaum*, is to put the creditor to an election. He must either sell the repossessed collateral under section 9.504 or retain the property in complete satisfaction of the debt pursuant to section 9.505.

*Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp.*, 749 S.W.2d 915, 918 (Tex. App.—Dallas 1988, no writ). Under the law in effect at the time, Gillespie's retention of collateral was a complete bar to recovery on any deficiency. *See Tanenbaum*, 628 S.W.2d at 771; *Whirlybirds Leasing Co.*, 749 S.W.2d at 918; *Gordon & Assocs. v. Cullen Bank/Citywest, N.A.*, 880 S.W.2d 93, 98 (Tex. App.—Corpus Christi 1994, no writ). Because we agree with Williams' argument that retention of the track hoe bars collection of any deficiency, we do not address Williams' remaining arguments concerning any deficiency owed to Gillespie.

## VI. The Abstracted Judgment Has Been Satisfied

Williams raised the doctrine of accord and satisfaction in his second amended answer. Since Gillespie's retention of the track hoe was a complete bar to the recovery of any deficiency, the Abstracted Judgment had been satisfied prior to this lawsuit. "Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). When Gillespie's security interest was satisfied under the U.C.C. by retaining the track hoe, the Abstracted Judgment (which was based on the same

13

security interest) was satisfied. No further recovery can be obtained based on the Abstracted Judgment. The trial court erred in rendering judgment in favor of Gillespie.

## VII. Williams Is Not Entitled to Relief on Counterclaim

In his prayer to this Court, Williams requests a reversal and rendition in part and a reversal and remand in part. Williams asks that we remand the case to the trial court for the purpose of (1) determining if appellee should be "ordered to execute and deliver to Appellant a release of judgment and lien in recordable form," (2) determining "Appellant's right to a declaratory judgment," and (3) determining "if Appellant is entitled to recover compensation or damages, and the amount thereof, for his delivery of goods and services to Appellee." All of Williams' issues and his argument concern Gillespie's cause of action. In his second amended answer, Williams requested a take-nothing judgment. Although Williams requested the above-mentioned relief in his counterclaim, Williams did not file a separate point of error on appeal concerning the trial court's denial of his counterclaim. No authority or argument is made on the above three requests for relief. In a civil case, this Court is prohibited from addressing unassigned error. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998). In order for error to be assigned for our review, the error must be raised in a point of error or issue. TEX. R. APP. P. 38.1(f). Although points of error should be liberally construed "in order to obtain a just, fair and equitable adjudication of the rights of the litigants,"[18] Williams does not present any argument concerning the denial of his counterclaim in any of the issues that were assigned for our review and does not

---

[18]*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

14

provide any authority.  *See* TEX. R. APP. P. 38.1(i).  Merely requesting relief in a prayer or conclusion is insufficient to assign the error, if any, for our review.  *See Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 259 (Tex. App.—Houston [14th Dist.] 1998, no writ).  Without error being assigned for our review, we are prohibited from remanding for any relief on Williams' counterclaim.

## VIII.  Conclusion

When Gillespie elected to sell the bulldozer and track hoe through a private sale instead of abiding by the terms of the judgment, Gillespie elected to proceed under the requirements of the U.C.C.  Under the U.C.C. in effect at the time, Gillespie's retention of the track hoe had the effect of satisfying the remaining debt in full.  Because Gillespie's retention of the track hoe barred any recovery of a deficiency (because there was then none), the Abstracted Judgment had been satisfied and the trial court erred in foreclosing the judgment lien on the real property.

On appeal, Williams raised no issues concerning his counterclaim.  Thus, if there was any error committed by the trial court in denying Gillespie's counterclaim, it is not assigned for our review.  We reverse the judgment of the trial court and render a take-nothing judgment in favor of Mike and Kathy Williams.


Bailey C. Moseley
Justice


15

Date Submitted:    April 12, 2011
Date Decided:    May 13, 2011