

# NUMBER 13-21-00237-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARYAM SABOHI AND PERSIA
COUNTRY CORNER, LLC,                                          Appellants,

v.

MOUNTAIN EXPRESS OIL COMPANY,                                Appellee.

On appeal from the 138th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Contreras**

Appellants Maryam Sabohi and Persia Country Corner, LLC (collectively, Country

Corner) appeal the trial court's judgment dismissing its claims against appellee Mountain

Express Oil Company for lack of jurisdiction. We reverse and remand.

## I.    BACKGROUND

Country Corner operates a gas station in Brownsville, Texas, and Mountain Express is a wholesale petroleum supplier based in Acworth, Georgia. The parties entered into a petroleum supply agreement in April 2018 under which Mountain Express was to be Country Corner's exclusive petroleum supplier for ten years. The agreement contained a choice of law provision and a forum selection clause providing that the agreement was "entered into and shall be construed under the laws of the State of Georgia and the parties agree that exclusive venue and jurisdiction shall be with the Superior Court of Cherokee County, Georgia for any actions, suits[,] or proceedings."

A dispute arose under the agreement, and the parties both threatened legal action. On February 13, 2019, Country Corner sued Mountain Express in the 138th District Court of Cameron County including claims for, *inter alia*, deceptive trade practices, breach of contract, and fraud. On February 22, 2019, Mountain Express sued Country Corner in the Superior Court of Cherokee County, Georgia for breach of contract. On February 27, 2019, Country Corner was served with Mountain Express's Georgia lawsuit. On March 4, 2019, Mountain Express was served with Country Corner's Texas lawsuit.

On March 22, 2019, Mountain Express filed its original answer in the Texas suit and a motion to dismiss based on the agreement's forum selection clause. No ruling on this motion to dismiss appears in the record.

On April 16, 2019, Mountain Express moved for default judgment in the Georgia suit "on the grounds that more than forty-five . . . days ha[d] elapsed since [Country

Corner] w[as] served, and [Country Corner] ha[d] filed no defensive pleadings thereto." Two days later, Mountain Express served Country Corner with notice of a default judgment hearing in the Georgia suit set for June 5, 2019. At the June 5 hearing, Country Corner failed to appear, so the Georgia court entered a default judgment for $303,808.14. Mountain Express notified Country Corner of the Georgia judgment that same day.

On July 30, 2019, Mountain Express filed the Georgia judgment into Country Corner's pending Texas lawsuit in the 138th District Court, ostensibly pursuant to § 35.003 of the Texas Uniform Enforcement of Foreign Judgment Act (UEFJA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.003. On August 19, 2019, Country Corner moved "to contest recognition of [the] foreign judgment" on the grounds that it was "wholly interlocutory and should be stayed until [Country Corner's] claims [in the Texas suit] have been adjudicated." The trial court set a hearing on Country Corner's motion for September 12, 2019. On September 12, the parties requested a continuance, and the trial court set a new hearing date of October 15, 2019. At Country Corner's request, the parties entered an agreement to pass the October 15 hearing to a later, unscheduled date.

On June 6, 2020, Country Corner filed a brief in support of its motion to contest the Georgia judgment in which it argued that Georgia law "dealing with default judgments casts doubt as to the finality of the foreign judgment." It also contended that the Georgia judgment was not a final judgment because it did not dispose of all of its claims pending in the Texas lawsuit. Country Corner requested that the judgment not be given full faith and credit or that its enforcement be stayed pending the outcome of its Texas suit.

3

On July 6, 2020, Mountain Express filed a response to Country Corner's motion to contest the Georgia judgment arguing that the Georgia judgment was final and Country Corner had failed to meet its burden to prove an exception to the full faith and credit clause to challenge the judgment. On October 28, 2020, Mountain Express moved "to dismiss [Country Corner's] motion to contest enforcement of [the] foreign judgment for lack of jurisdiction." Mountain Express asserted that while Country Corner filed a timely motion to contest the Georgia judgment, it failed to obtain a ruling on the motion "as required by the time constraints of Rule 329b(c) [of the rules of civil procedure]."[1] *See* TEX. R. CIV. P. 329b(c). Thus, Mountain Express continued, the motion was "overruled by operation of law as of October 14, 2019," and the trial court's plenary power to vacate, modify, or correct the Georgia judgment expired as of November 12, 2019. Mountain Express requested that the trial court dismiss Country Corner's motion to contest the Georgia judgment.

On February 5, 2021, Country Corner responded to Mountain Express's motion to dismiss its motion to contest. In its response, Country Corner argued that the Georgia judgment did not dispose of its Texas claims, so its enforcement should be stayed pending the Texas suit's resolution. The trial court heard arguments on Mountain Express's motion on February 8, 2021. Four days later, Mountain Express filed a reply to Country Corner's response to its motion to dismiss contending that the entire Texas suit

---

[1] As discussed further below, a motion to contest a foreign judgment filed under the UEFJA operates as a motion for new trial. *See Moncrief v. Harvey*, 805 S.W.2d 20, 22 (Tex. App.—Dallas 1991, no writ).

should be dismissed because: (1) the trial court lacked jurisdiction, as Mountain Express previously argued; and (2) even if the trial court maintained jurisdiction to rule on a challenge to the Georgia judgment, "the Georgia judgment has res judicata effect, barring [Country Corner's] claims in [the Texas suit] anyway."

On July 1, 2021, the trial court granted Mountain Express's motion to dismiss for lack of jurisdiction Country Corner's motion to contest the Georgia judgment. The trial court based its judgment on the following findings:

1. [Mountain Express] filed its Notice of Filing Foreign Judgment in this case on July 30, 2019.

2. [Country Corner] filed [its] Motion to Contest Foreign Judgment on August 19, 2019—within 30 days of [Mountain Express's] Notice of filing Foreign Judgment.

3. [Country Corner] ha[s] failed to obtain a ruling on [its] Motion to Contest Foreign Judgment as required by the time constraints of Rule 329b(c) [of the rules of civil procedure]; accordingly[,] the Motion to Contest Foreign Judgment is overruled by operation of law as of October 14, 2019.

4. Further, the court's retention of plenary power for an additional 30 days after [Country Corner's] motion is overruled by operation of law . . . has also expired as of November 12, 2019.

Instead of granting the relief requested in Mountain Express's motion (to dismiss Country Corner's motion to contest the Georgia judgment for failure to obtain a ruling while the trial court maintained plenary power), the trial court dismissed the entire Texas suit without prejudice due to its purported lack of jurisdiction.

This appeal by Country Corner followed in which it argues that the trial court erred by (1) dismissing the entire Texas suit and (2) "granting [Mountain Express] more relief

5

than was" requested. We address these issues together.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

### A.     Standard of Review

We review de novo issues pertaining to the trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). In doing so, "we are not limited to arguments made in the trial court." *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 112 (Tex. App.—Dallas 2012, no pet.) (citing *Rusk St. Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012)); *see Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004) ("Not only may an issue of subject matter jurisdiction be raised for the first time on appeal by the parties or by the court, a court is obliged to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it." (cleaned up)). When the trial court makes findings of fact, "the judgment may not be supported by an implied finding on any ground of recovery, or defense, of which no element has been included in the court's findings." *Williams v. Gillespie*, 346 S.W.3d 727, 732 (Tex. App.—Texarkana 2011, no pet.); *see* TEX. R. CIV. P. 299.

### B.     Filing Foreign Judgments

"The United States Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state." *Gesswein v. Gesswein*, 566 S.W.3d 34, 38 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied) (citing U.S. CONST. art. IV, § 1). "Under this principle, Texas is required to enforce a valid judgment from another state." *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132

6

S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (op. on reh'g). Texas law provides two methods to enforce a foreign judgment in the state.

### 1. UEFJA

The first method by which a judgment creditor may domesticate a foreign judgment is to file the judgment under the UEFJA, "which establishes a procedure for enforcing a foreign judgment by merely filing an authenticated copy of the judgment with the clerk of any court in Texas with competent jurisdiction." *Brown's Inc. v. Modern Welding Co.*, 54 S.W.3d 450, 453 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(a) ("A copy of a foreign judgment authenticated in accordance with an act of congress or a statute of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state."). When a judgment creditor proceeds under the UEFJA, the filing of a foreign judgment with the clerk of the court "partakes of the nature of both a plaintiff's original petition and a final judgment: the filing initiates the enforcement proceeding, but it also instantly creates a Texas judgment that is enforceable." *Moncrief v. Harvey*, 805 S.W.2d 20, 22 (Tex. App.—Dallas 1991, no writ); *see Walnut Equip. Leasing Co. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996) (per curiam).

A foreign judgment under the UEFJA is treated "in the same manner as" and "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(b), (c); *see Tammy Tran Att'ys at Law, LLP v. Spark Funding, LLC*, 634 S.W.3d 311, 314–15 (Tex. App.—

Houston [1st Dist.] 2021, pet. denied) ("The judgment debtor may use any procedural device for reopening, vacating, or staying the judgment that any post-judgment debtor is allowed."). Texas courts have compared a "debtor's position in a [UEFJA] proceeding to the position of one who has suffered a no-answer default judgment." *Moncrief*, 805 S.W.2d at 23. The debtor may not have had the opportunity to "defend[] against the judgment in a trial, but he is not cut off from any post[-]judgment procedures for attacking the judgment." *Id.*

A "motion to contest the recognition of a foreign judgment . . . operates as a motion for new trial in the context of a [UEFJA] proceeding." *Moncrief*, 805 S.W.2d at 23; *see Mindis Metals, Inc.*, 132 S.W.3d at 483; *Tammy Tran*, 634 S.W.3d at 316. Accordingly, a judgment debtor challenging the enforcement of a foreign judgment filed under the UEFJA must comply with Rule 329b of the rules of civil procedure. *See* TEX. R. CIV. P. 329b (presenting the rules for the timely filing of "motions for new trial and motions to modify, correct, or reform judgments"); *see also De Lage Landen Fin. Servs., Inc. v. M.D.H. Oilfield Servs. LLC*, No. 02-22-00139-CV, 2023 WL 2703640, at *1 (Tex. App.—Fort Worth Mar. 30, 2023, no pet. h.) (mem. op.) ("A motion challenging the validity of the foreign judgment acts as a motion for new trial and must be filed within thirty days of the entry of judgment while the trial court still maintains plenary power.").

## 2. The Common Law Action

Alternatively, a judgment creditor may domesticate a foreign judgment by filing a common law enforcement action, which maintains the same character as any other civil

8

proceeding—meaning, generally, that "the judgment creditor, as plaintiff, initiates the action, the judgment debtor, as defendant, can assert his defenses, and an appealable judgment results." *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 902 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 35.008 ("A judgment creditor retains the right to bring an action to enforce a judgment instead of proceeding under this chapter."); *Moncrief*, 805 S.W.2d at 22 (noting that in a common law action, the "losing party can appeal just as in any other case"); *see also* James P. George, *Enforcing Judgments Across State and National Boundaries: Inbound Foreign Judgments and Outbound Texas Judgments*, 50 S. TEX. L. REV. 399, 421–22 (2009) (noting generally that in a common law enforcement action, the judgment creditor files suit and will usually then immediately move for summary judgment raising the foreign judgment for issue or claim preclusion purposes).

Under both the UEFJA and in a common law action, "[o]nce the party seeking enforcement of a foreign judgment has presented an authenticated judgment that appears to be a final and valid judgment, the burden then shifts to the party resisting the judgment to establish an exception to full faith and credit." *Charles Brown, L.L.P.*, 124 S.W.3d at 902; *see Gesswein*, 566 S.W.3d at 38. "The presumption of the foreign judgment's validity can be overcome only by clear and convincing evidence." *Gesswein*, 566 S.W.3d at 38. To meet that burden, the judgment debtor must prove one of the exceptions to the full faith and credit requirement. *Id.*

> There are five well-established reasons to deny a foreign judgment full faith and credit: (1) the foreign judgment is interlocutory; (2) the foreign judgment

is subject to modification under the rendering state's law; (3) the rendering state lacked jurisdiction; (4) the foreign judgment was secured by extrinsic fraud; and (5) the period for enforcing the foreign judgment in Texas has expired under civil practice and remedies code [§] 16.066.

*Id.* at 38 n.2; *see Mindis Metals*, 132 S.W.3d at 484; *Charles Brown, L.L.P.*, 124 S.W.3d at 903.

### III.    DISCUSSION

Save for a brief discussion in appellants' reply brief on appeal indicating otherwise, the parties seem to assume that Mountain Express filed its Georgia judgment under the UEFJA. Accepting that the Georgia judgment is valid and final, Country Corner asserts that the trial court erred by dismissing its entire Texas cause for lack of jurisdiction because "the trial court nevertheless has plenary jurisdiction to resolve the issues related to the enforcement of the [Georgia] judgment." Country Corner also contends that, by granting Mountain Express more relief than was requested in Mountain Express's motion to dismiss for lack of jurisdiction, the trial court deprived Country Corner of fair notice that its claims could have been summarily dismissed without further briefing. After de novo review, we disagree with the parties' underlying assumption that Mountain Express filed its Georgia judgment under the UEFJA. We conclude that the trial court erred by: (1) impliedly concluding that Mountain Express filed its judgment under the UEFJA; (2) concluding that it lost plenary power to consider the effect of the Georgia judgment on the Texas suit; and (3) dismissing the entire Texas suit for lack of jurisdiction.

Two cases highlight the trial court's errors here. In *Myrick v. Nelson's Legal Investigating & Consulting*, Myrick hired Nelson's Legal Investigating & Consulting

10

(Nelson) for certain services but refused to pay Nelson after the services were performed. No. 04-08-00174-CV, 2009 WL 1353538, at *1 (Tex. App.—San Antonio May 13, 2009, no pet.) (mem. op.). Nelson sued Myrick in Utah and obtained a default judgment. *Id.* "Nelson filed an abstract of judgment in the deed records of Zapata County, Texas, placing a lien on property Myrick owned in the county." *Id.* Soon after, Myrick learned of the lien and filed suit against Nelson in Texas "claiming slander of title and collaterally attacking the Utah judgment." *Id.* Nelson answered, participated in depositions, filed a jury demand, and moved for no-evidence summary judgment on each of Myrick's claims. *Id.* at *1, 3. Myrick then filed a cross-motion for summary judgment, and Nelson thereafter "amended his answer and for the first time counterclaimed that he held a valid judgment based on his contemporaneous filing of the Utah judgment pursuant to the [UEFJA]." *Id.* at *1. Myrick responded by filing a "motion to vacate [the Utah] judgment and/or motion for new trial," arguing in part that he was not properly served under Utah law. *Id.* The trial court granted Nelson's no-evidence summary judgment, and Myrick appealed to the San Antonio Court of Appeals. *Id.*

The appellate court first addressed Nelson's argument that regardless of whether the trial court erred in its summary judgment ruling, "the trial court lost jurisdiction to vacate the Utah judgment because Myrick failed to timely appeal Nelson's counterclaim to enforce the judgment, which Nelson contends he filed in compliance with [the UEFJA]." *Id.* at *3. After describing the different methods by which to domesticate foreign judgments in Texas, the court of appeals disagreed with Nelson's contention. *Id.* The court asserted

11

that "[t]he circumstances of this case are not comparable to a no-answer default judgment because Nelson did not initiate the proceeding to enforce his judgment." *Id.*; *see Moncrief*, 805 S.W.2d at 23. It continued, "Instead, the circumstances here are more akin to a common law enforcement action. Therefore, we conclude that when Myrick initiated the proceedings by filing a slander of title suit against Nelson, he effectively prevented the Utah judgment from instantly becoming an enforceable Texas judgment." *Myrick*, 2009 WL 1353538, at *3. Further bolstering its conclusion was the fact that Nelson had filed multiple pleadings in the Texas action before filing his counterclaim based on the Utah judgment. *Id.* Because Nelson had pursued a common law action to enforce his Utah judgment, the court concluded that "the ordinary timetables to challenge a final judgment envisioned under [the UEFJA] do not apply . . . and Nelson's claim that the trial court lacked jurisdiction to modify or vacate the Utah judgment is without merit." *Id.* The court then proceeded to the merits of Myrick's appellate issues, rather than dismissing the case for want of jurisdiction. *Id.*

Similarly, in *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, "Lanier sought to enforce [a] Georgia judgment in a Texas district court where Brown L.L.P. had previously filed suit against Lanier." 124 S.W.3d at 888. Both parties moved for summary judgment, and the trial court ruled for Lanier and entered a judgment domesticating the Georgia judgment. *Id.* at 892–93. Brown L.L.P. appealed. *Id.* at 893. On appeal, Houston's Fourteenth Court of Appeals described the manners by which a judgment creditor may properly domesticate a foreign judgment; stated that "by seeking enforcement of the

12

Georgia judgment in the district court action, Lanier elected to pursue enforcement through a common-law action"; and analyzed Brown L.L.P.'s claims accordingly. *Id.* at 902.

The facts here are strikingly similar. Instead of separately filing its judgment under the UEFJA and instantly creating an enforceable Texas judgment, *see Moncrief*, 805 S.W.2d at 22, Mountain Express filed its Georgia judgment into Country Corner's active Texas suit after filing multiple pleadings. By doing so, Mountain Express elected to enforce its Georgia judgment through a common law suit in which Country Corner was entitled to raise its defenses and exceptions to full faith and credit and from which an appealable judgment would result. *See Gesswein*, 566 S.W.3d at 38; *Charles Brown, L.L.P.*, 124 S.W.3d at 888; *see also Myrick*, 2009 WL 1353538, at *3. We thus conclude that the timetable under Rule 329b of the rules of civil procedure and the UEFJA was inapplicable to Country Corner's challenge to the Georgia judgment, so the trial court maintained plenary power and jurisdiction to consider the challenge. *See Charles Brown, L.L.P.*, 124 S.W.3d at 888; *see also Myrick*, 2009 WL 1353538, at *3.

We note that by dismissing the Texas suit for lack of jurisdiction, the trial court also deprived Mountain Express of a final judgment domesticating its Georgia judgment. In a common law action, it is the trial court's judgment domesticating the foreign judgment that makes the latter enforceable. *Charles Brown, L.L.P.*, 124 S.W.3d at 902; *Moncrief*, 805 S.W.2d at 22. By dismissing the Texas suit for lack of jurisdiction, the trial court dismissed Mountain Express's pleadings with it—including the Georgia judgment.

13

Finally, Mountain Express contends that even if the trial court maintained jurisdiction to rule on a challenge to the Georgia judgment, "the Georgia judgment has res judicata effect, barring [Country Corner's] claims in [the Texas suit] anyway." The trial court is free to consider that argument below, but it did not include that among its findings underlying its judgment. Therefore, this nonexistent finding cannot support the judgment. *See* TEX. R. CIV. P. 299; *Williams*, 346 S.W.3d at 732.

Because the trial court maintains jurisdiction over Country Corner's Texas suit and to consider full faith and credit challenges to the Georgia judgment, we sustain Country Corner's issues.

## IV.   CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this memorandum opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
20th day of July, 2023.

14